Good morning. Illinois Appellate Court, First District Court is now in session. The Fourth Division, the Honorable Justice Jesse G. Reyes presiding, case number 20-0859, People v. Anthony Winters. Thank you, Mr. Schaffer. Good morning, gentlemen. Would the counsels who are going to be arguing this matter please identify yourselves for the record and then the party you're representing. Good morning, Your Honors. My name is Joseph Ben-Ark of the Office of the State Appellate Defender, and I represent Mr. Anthony Winters. Okay. Daniel Pivovarczyk on behalf of the people. Okay. All right. So 15 minutes apiece. Appellant, you want to reserve some time for rebuttal? Yes, Your Honor. How much time? I anticipate probably about five minutes. Five minutes. All right. Okay. All right. Why don't you proceed? Good morning, Your Honors. Anthony Winters has raised two issues on appeal. I intend to address both. And then, as I said, I'd like to reserve a few minutes for rebuttal. As to the first issue, the state failed to prove Winters guilty beyond a reasonable doubt. Even if everything happened exactly as the complainant testified, Winters did not violate the section of the criminal assault statute he was charged under. This follows from both the plain language of the statute and the Illinois Supreme Court's decision in Lloyd. The subsection Winters was charged under applies only in cases in which a defendant commits an act of sexual penetration against a person whom he knows is unable to understand the nature of the act or to give knowing consent. It does not, as the state asserts, apply to a failure to obtain affirmative consent or a non-consensual act of penetration standing alone. If the legislator had intended the state's reading of the statute, it could have simply prohibited non-consensual touching or penetration. Instead, it phrased the statute in terms of the complainant's ability to consent. As the Illinois Supreme Court noted in Lloyd, it is for this reason that the statute has been almost exclusively applied to situations in which the complainant was severely mentally disabled, highly intoxicated, unconscious, or asleep. Counsel, if I could interrupt you for a second. So, how are you defining consent here based on your interpretation of what the language is in the statute? Well, I'm defining it in terms of just the ability to consent. The focus, as the court made clear in Lloyd, is not on whether the complainant did, in fact, consent. I think it's clear from her testimony that she didn't consent, but rather the statute speaks in terms of her ability to consent. The statute is intended to apply to people and to punish people who take advantage of people who are highly intoxicated or mentally disabled or completely unable to consent. So, therefore, your definition of consent is what? My definition of consent would be, obviously, you know, definition of consent would be being, I guess, just, my definition of consent would apply to, I think it's two separate concepts here. Winters is not arguing that the complainant in this case did, in fact, consent to his actions, but the question is whether she was able to consent. And yes, here she could have consented, and she could have said yes or no. And in fact, she eventually did tell Mr. Winters, no, I'm not okay with what you're doing, which shows that she was able to consent. Now, it's a separate question of whether she did, in fact, consent. It's clear that, you know, her testimony that she did not. Okay. All right. You may proceed. The state argues, as discussed, that, in essence, that the complainant's inability to consent can be inferred from the fact that she did not consent. But as I just mentioned, whether the complainant did, in fact, consent is a separate question from whether she was able to consent. As in Lloyd, the court stated, you know, the proper inquiry in a prosecution under this section has to be on the defendant's particular knowledge of the complainant's ability to consent. So non-consensual penetration not involving the use of force is punishable as battery, but it does not fall under the reach of the section at issue here. The criminal sexual assault statute, by its plain language, was intended to apply to offenders who commit forcible sexual assaults or who prey upon children or them severely mentally incapacitated. So a winter's conduct, while alleged conduct, while punishable as battery, is not equivalent to the heinous conduct contemplated by the criminal sexual assault statute. And neither Burpo nor the other cases cited by the state support its position. As an initial matter, Burpo dealt with the narrow question of whether or not the criminal sexual assault statute was void for vagueness. It did not reach the merits of the case. And moreover, Burpo must be read in light of Lloyd, which is the Illinois Supreme Court's most recent analysis of this section of the criminal sexual assault statute. In Lloyd, the court found that the defendant's knowledge that the complainant was 13 did not equate to knowledge that she was unable to consent, despite the fact that 13-year-olds in Illinois are legally incapable of consenting. Again, as the court noted in Lloyd, the focus has be on the unique facts of each case and the defendant's particular knowledge. Based on that, how is Lloyd applicable here since we don't have an age factor involved in this matter? It's applicable by way of analogy and by showing that the focus has to just be on the particular facts of each case and that there's no sort of per se rules when it comes to, you know, an inability to consent. So the mere fact the complainant in this case was receiving a massage did not by itself render her any more unable to consent than the fact that the complainant in Lloyd was 13 rendered her unable to consent. In sum, the section that Winters was charged with violating applies to a very narrow range of conduct, specifically cases where the complainant is, by reason of incapacitation, completely incapable of consenting. The facts presented here show that this is not one of those situations. The state failed to heed the Lloyd's Court admonishment to carefully consider the offenses that it chooses to charge or prosecute in the future, and as a result, it charged Winters with an offense he did not commit. Accordingly, this court should reverse his convictions. Moving on to the second issue, section 4.5-100B violated Winters' right to due and equal protection by denying him custodial credit for the 817 days he spent on home detention. As an initial matter, this court should reject the state's contention that this issue can be resolved on non-constitutional grounds because Winters was on bond and therefore not in custody. Whether Winters was in custody, as past cases have defined that term, is irrelevant because section 4.5-100 awards credit for time spent in custody and for time spent on home detention. Determining whether a defendant is in custody involves a completely different analysis than determining whether he was on home detention. Unlike custody, home detention is statutorily defined, and its definition says nothing about bond. In other words, whether a defendant is on bond is relevant for determining whether he's in custody, but it has no bearing on whether he was on home detention. And notably, the state does not claim that Winters was not on home detention. Its argument is based solely on its erroneous belief that section 4.5-100 requires a defendant to be in custody in order to receive credit, but that's not what the statute says. It says a defendant shall receive credit for time spent on home detention. As to the merits of the issue, this version of the statute... Before you move on to the merits, the state has cited People v. Stolberg, the second district case, where they found that electronic home monitoring wasn't home detention. Yes, Your Honor. Stolberg relied on a, I believe it was a third district case, People v. Smith. And Smith looked at the Illinois Supreme Court's decision in Ramos and Beechin in concluding that a defendant on bond cannot receive pretrial credit. But at the time, Ramos and Beechin were decided, the statute only awarded credit for time spent in custody. And because custody does not have a statutory definition, the court in Ramos and Beechin had to formulate one in light of past case law. And in doing so, the court concluded that a defendant on bond is not in custody. But as I mentioned already, that has no determination on whether he was on home detention. Home detention is statutorily defined as the release of a person convicted of a charge or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority. Here, the information included in the record shows that Winters was confined to his residence under the terms of a supervising authority, which is... The sheriff is a statutorily designated supervising authority. The original bond hearing, the conditions of bond from the judge stated that if released, the defendant was to be placed on electronic home management. So who is the supervising authority then? The bond hearing did say that, but other portions of the record show that in order for Winters to leave his house for any reason, he had to have the permission of the sheriff. The court could recommend that Winters be allowed to change his host site. But again, the order indicates that that recommendation was subject to the approval of the sheriff. So the sheriff is ultimately the supervising authority here because he has ultimate authority to determine whether or not the terms and conditions of his or her house were to be changed. Is there an indication that there was an administrative mandatory furlough? Is that something that's done in the jail through the sheriff? I'm not sure, your honor. Thank you, counsel. As to the Barrett's, the version of section 4.5-100 that was in effect at the time Winters was sentenced awarded pretrial credit for time spent on home detention to offenders convicted of probational offenses, but denied it to offenders convicted of non-probational offenses. The distinction drawn by the statute between this distinction lacks a rational basis. It makes no sense and moreover is profoundly unfair to treat two sets of offenders, both subject to the same terms of confinement, differently for purposes of awarding sentence credit. The state contends that the prior version of section 4.5-100 is rationally related to the state's interest in punishing offenders convicted of non-probational offenses more harshly. But the state offers little support for this assertion beyond claiming that the state has a rational interest in preventing offenders like Winters from gaining the system by accumulating pretrial credit and thereby avoiding going to prison. But the state's argument is untenable for a number of reasons. As the court stated in Ramos, the purpose of awarding pretrial credit is to ensure that a defendant does not serve in excess of the maximum sentence. It has nothing to do with punishment. And moreover, contrary to the state's suggestion, Winters would not receive a windfall if he were awarded credit for the time he spent on home detention. The state acts as if Winters was free to go about his business while he was on home detention, but he wasn't. His freedom to leave his house was severely restricted, subject to the approval of the sheriff, and he was not able to work. In fact, denying Winters credit for the 817 days he spent on home detention means that he will ultimately be punished more harshly than if he had been ordered to await trial in jail. After all, he would have served his sentence by now had he awaited trial in jail. Instead, he's being required to serve the entire four-year sentence in addition to the 817 days that he already spent on restrictive home detention. The state's argument might have some basis if the legislator had declared that offenders convicted of non-probational offenses are not eligible for pretrial credit at all. But that's not what it did. Following the state's logic would mean that the legislator intended to punish offenders like Winters who have been determined to be capable of complying with the terms of home detention, and who do in fact comply with those terms, more harshly than those offenders whom it determines should be required to await trial in jail. What about their argument that the amendment occurred in statute, the amendment occurred after your client was sentenced, therefore he doesn't fall under the amendment that occurred in 2021? It's true, yes, that the statute was amended after Winters was sentenced, and then now it did then remove the distinction between offenders convicted of probational offenses and non-probational offenses. But the statute that was in effect at the time that Winters was, and so for that reason, the statute that was in effect at the time Winters was sentenced was unconstitutional because he rationally, that distinction that it drew between probational offenses and non-probational offenses was not rationally, it had no rational basis, and it discriminated against him by denying him his 817 days of credit. But isn't part of your argument that actually the amendment is applicable to him? No, your honor, my argument is that it is unconstitutional, that the prior version is unconstitutional as applied to him. Okay. And so Winters acknowledges that the legislator does have the power for setting the punishment for criminal offenses. That's not in question here. And that pursuant to that authority, the legislator can, of course, declare that some offenses are probational, warrant probation, and that certain offenses warrant longer prison sentences than others. But what it cannot do, absent a rational basis, is say that the exact same terms of confinement mean one thing for some offenders and something else entirely for others. Because that's exactly what the prior version of section 4.5-100 did, this court should find it unconstitutional and award Winters the 817 days of credit to which he's entitled. If your honors have no further questions, I'd like to reserve the rest of my time for rebuttal. Any other questions from the panel? Your constitutional challenges as applied? I misspoke.  I apologize, your honor. And what is your argument as to the cases cited by the state dealing with the sexual assault in the medical or treating context? Um, well, two of the cases cited by the state, Quinlan and Dina Dayaloo, those both predate Lloyd. And they focused erroneously on whether the patient did consent, not whether she was able to consent, which Lloyd makes clear that that is the proper focus for prosecutions under this section of the criminal sexual assault statute. As to Burpo, which is an Illinois Supreme Court case, it has to be read in light of Lloyd, which is the most recent analysis of this issue. And Lloyd's focus on not per se rules, but looking to the defendant's particular knowledge of the complainant's ability to consent. And in this case, looking at it through this lens, it shows that the complainant in this had the ability to consent. And so Winters was not properly prosecuted under this section of the criminal sexual assault statute. Again, his alleged conduct would be prosecutable as battery. And there are cases in which defendants have, based on similar conduct, been prosecuted for battery. And People v. Hayashi, a chiropractor was found guilty of battery for fondling the breast, buttocks, and vagina of a patient during examination. They did not charge him with under this section of the criminal sexual assault statute, because it's not applicable in this type of situation. And was there any objections raised at the outset of the trial with regards to the charges that were brought against your client? No, Your Honor. Not that I'm aware of. Any other questions from the panel? No. Okay. All right. Thank you. State. May it please the court. With regard to issue one, the defendant knew that the victim was unable to knowingly consent to his digital penetration of her vagina. He knew this because he did it swiftly and without warning during the course of an otherwise professional massage. Keep in mind, the standard here is whether any rational trier of fact could have made this finding when viewing the evidence in the light most favorable to the prosecution. The victim here only consented to a professional massage. Defendant knew this, and he chose to exceed the scope of that professional massage without providing her any opportunity to knowingly consent. Therefore, he knew that she was unable to give knowing consent because he was the one who deprived her of that ability. He did this by- Counsel, let me ask you a question factually here. So the first act takes place, and then the second act takes place. And then at that point in time, he asks her if she's okay with it. And then she responded that she wasn't. So it wasn't until he inquired of it, whether or not she was okay with these actions taking place, that she finally said that she wasn't. So was there a voluntary consent here? Absolutely not, Your Honor. This was a situation where her voluntary consent was to a professional massage, and then he intentionally went beyond that. And only after he had committed an act of sexual penetration upon the victim, then he saw that she physically jumped on the massage table, and then he asked if it was okay. That's not how the criminal sexual assault statute works. You can't assault someone and then ask afterwards if it's okay. And in fact, that demonstrates his knowledge that what he was doing was wrong, because he wouldn't have had to ask if he had known that she had consented already. And what he said after that, he apologized, and he said that he usually doesn't do that, but he did it in this case because the victim was so attractive. That's what he told the victim afterwards. He didn't say, I misunderstood. He didn't say, I thought you were able to consent. He apologized for committing a sexual assault upon her. And that's absolutely what the trial court saw had happened here. And to suggest that this somehow should have been charged as a simple battery, as opposed to a criminal sexual assault, is frankly insulting. I just want to go to the fact that Berpo and Dina Deleu both dealt with physicians who exploited circumstances of medical examinations. And Quinlan applied the same reasoning to a respiratory therapist who exploited the circumstances of a respiratory therapy session. There's no logical reason why that same standard should not apply to a medical examiner. To a massage therapist like the defendant. Contrary to defendant's claims, Lloyd did not abrogate Berpo, Dina Deleu, or Quinlan. The victim in Lloyd, the difference here, like there's night and day difference between Lloyd and the cases that apply here, because that difference has to do with the difference between legal consent and factual consent. The victim in Lloyd factually consented to the acts of sexual penetration of the defendant. The issue in Lloyd was whether the defendant's knowledge of the victim being 13 years old, without anything more, was sufficient to establish that she was legally unable to consent. And the Lloyd court said that age alone was not sufficient and emphasized that the defendant had not been properly charged in that case. Because that was an age-based case dealing with legal consent, not factual consent. So, based on the victim's age, the defendant in Lloyd should have been charged with aggravated criminal sexual abuse. So, Lloyd here has nothing to do with the case at bar. It has nothing to do with a situation where the victim was an adult and the defendant was properly charged. This was clearly a criminal sexual assault. Okay, so Lloyd says that you have the burden of showing that the defendant knew that some fact prevented the victim's ability to understand the act or give knowing consent to it. That's correct. Okay, so the counsel in his opening argument said the issue is not consent for them, it's the ability and the knowledge of the defendant of some fact. So, what is the knowledge of some facts here? We still need to work under Lloyd, even though the facts are different. Right, and Lloyd didn't somehow create a new requirement of a mental state for criminal sexual assault. That's always existed. For this particular offense, what was necessary was to show that the defendant knowingly, the defendant knew that the victim was unable under those circumstances that she was in to consent. And under these circumstances, the defendant was absolutely well aware of the fact that under the circumstances, the victim was under in the context of a massage where she was having her legs rubbed with oil, and she was like laying on her back with her eyes closed. He knew that under those circumstances, she was not able to knowingly consent to the act of sexual penetration that he was swiftly and without warning committing on her. He took advantage of the situation, he exploited the circumstances, just like the doctors in Lynn, and there's absolutely no question here that he knew what he was doing. And there was no doubt that the trier of fact, the trial court in this case, recognize that simply. Are you arguing that because of the setting here, there was no ability for her to give consent? Every case has to consider all of the facts in order to determine whether the elements are proven. So I'm not arguing for any. Across the board. Per se rule. But what I am saying is that when purple and. Dina day Lou looked at a physician who exploited a medical examination, it recognized that that fit under a victim being unable to consent. And when Quinlan looked at a situation where a respiratory therapist exploited the circumstances of a respiratory therapy session, once again, the court recognized under all of those circumstances, the victim was not able to consent. And in this case, under the circumstances here, which include the fact that the victim had consented to a professional massage, she had gone to a massage therapist, the defendant testified that he was licensed and certified as a clinical massage therapist. This was not a circumstance where she was laying on that table and allowing herself to be rubbed with oil with any sort of intention for her to have an act of criminal sexual assault committed upon her. He knew that she was unable to consent to that because she was in a position of vulnerability because of the circumstances of the massage, just like the circumstances of a medical examination. For to accept the defendant's argument would mean drastically narrowing the protections against criminal sexual assault. And I urge this court to reject them. If there are no other questions with regard to issue one, I'd like to turn to issue two. There's two points I want to make. First, the defendant's claim should be rejected without reaching the constitutional issue because the defendant has no cognizable constitutional claim here because the challenge statute simply does not apply to his situation. The defendant is not eligible for custody credit while on bond. The key here is that the Cook County Sheriff did not put the defendant on electronic monitoring as a condition of his custody. Rather, the defendant asked to be released on bond and the trial court put him on electronic monitoring as a condition of his release from custody. Illinois courts have consistently held that a defendant on electronic monitoring as a condition of bond is not in custody for purposes of sentencing credit. Now, the defense focuses on the phrasing home detention, but that phrasing was present in the statute when Smith was decided and when Stolberg was decided. This is not a new version of the statute. The Illinois courts have reviewed the version of the statute that applies to this defendant and said that when you're on bond, you don't get credit for being in custody and home detention is part of that statute. But if you look at the title of the statute, it's called custody credit. So what defendant has to argue is that Stolberg and Smith were wrongly decided and they just weren't. They were well-decided cases and they should be followed. The second point is that the defendant has failed to overcome the presumption that the challenge statute is constitutional. He has to deal with that presumption and he has not. The statute in question merely limited the availability of a particular form of sentencing credit to offenders convicted of those less serious offenses for which probation is permitted. The challenge statute did not violate equal protection because all offenders convicted of non-probationable offenses were treated exactly the same. They were all equally ineligible for the sentencing credit and defendant is simply not similarly situated to offenders convicted of probationable offenses. That's what his argument has to boil down to is the idea that somehow he has to be treated the same as somebody who was on electronic monitoring in a home detention for a possession of a controlled substance charge. But he wasn't out for a controlled substance charge. He was out for criminal sexual assault. He asked to get out on bond. He was out on bond. This was a condition of bond. All bonds have conditions. This may have been a more strict condition, but he was still on bond and he asked to get out of the jail. So the idea that somehow if he had stayed in the jail, he would have served his time by now, but he didn't. And also, it's worth pointing out that if we want to talk about fairness and windfalls, the defendant here made this argument strenuously to the sentencing court and the sentencing court absolutely explicitly said that it took into consideration the fact that the defendant would not get the credit for the time on electronic monitoring and instead considered that when it gave him the minimum sentence here, which the court indicated wouldn't ordinarily be what he would give. So the defendant already got consideration for that time that he spent on electronic monitoring from the trial court. And what he's asking for here is a windfall in several respects because he would be essentially getting a second piece of credit for the same time on electronic monitoring. With regard to substantive due process, once again, the treatment of probationable and only it has to be rationally related to a government interest. And to suggest that there's not a rational relationship to a government interest in punishing criminal sexual assault more strictly than possession of a controlled substance or another probationable offense, it simply doesn't make sense. There are oftentimes circumstances where people are like the same time in is treated differently. Concurrent and consecutive sentences also require the same time in custody to be treated differently. So this isn't a constitutional issue. This is a statutory determination as to who gets a particular credit and who does not. He has not overcome the presumption that this statute is constitutional. I have a question about the sentencing. The sentencing court had indicated that it never really had this in terms of the credit issue. I had never had this issue brought up before it. And then also questioned the fact of notice of bringing it up at this point in time when it was brought up during the trial. Can you comment on that? Yes, Your Honor. If you look at the transcript, it's very clear that the prosecution was doing everything absolutely above board and trying to keep the court apprised of the applicable statute. And the defense counsel had been told previously that the court that the ASA didn't believe that he was eligible for that electronic monitoring credit. And the court, while it initially did express some surprise about the applicability of that statute, later it realized in the subsequent hearing when it did apply it, it realized that that simply was a matter of the fact that the court wasn't used to having people out on bond for criminal sexual assault. It was used to having people out on bond with electronic monitoring as a condition in probationable, less serious offenses. So it wasn't familiar with that particular statute and that prohibition on credit being available for nonprobationable offenses because the serious nonprobationable offenses aren't the ones that people are frequently going to be out on bond on. And that was what the trial court explained in the subsequent hearing. And I would just say that the transcripts speak for themselves. And it's very clear here that there is nothing inappropriate or nefarious here. It was really a matter of the statute clearly not applying to the defendant. And it was the prosecutor's responsibility to bring that to the court's attention that once it was, the court applied the statute properly and the people are asking this court to affirm the trial court's well-reasoned judgment on that. Okay. Any questions from the panel? If there's nothing further, the people ask that for the reasons stated here and those in our brief, this court affirmed the defendant's convictions and sentence. Okay. Thank you, counsel. Rebuttal? Yes, your honor. And the state talks again about that this was done swiftly and without warning and therefore Winters knew that the complainant couldn't consent. But it's again conflating a lack of consent with an inability to consent. Its entire argument, in fact, conflates those two very separate concepts. The statute specifically refers to an inability to consent. If the legislator had wanted to punish as criminal sexual assault a non-consensual act, it very easily could have worded the statute that way. But it rightly made the determination that Winters' alleged conduct is simply not comparable to people who prey on children, the mentally incapacitated, or commit forceful sexual assaults. As regard to Winters' alleged apology, again, that doesn't show that he knew the complainant was unable to consent. It shows that at most he felt bad about what he had done, which is a completely separate issue. And as Justice Rochefort pointed out, the state was required beyond just his after-the-fact apology to point to some specific facts showing that Winters knew the complainant could not consent. And the state hasn't done that other than to say, well, she was receiving a massage. But then at the same time, the state claims that it's not making any sort of across-the-board determinations. But that's exactly what it's doing when it says that. When it says that she can't consent because she was receiving a massage. As to issue two, the state says that because of the trial court, he asked to be released on bond and then was put on EM, referred to EM by the trial court, that that shows that he was not on home detention. But again, it was the sheriff who was ultimately in charge of those terms. The trial court had no authority to allow Winters to leave his house. That was the sheriff. He was under the confinement of a statutorily designated supervising authority. The state's reading of the statute would essentially render the whole point about home detention superfluous because the state keeps saying custody, custody, custody. Winters wasn't in custody. Well, if that's all that mattered, if custody was the only relevant determination, there would have been no reason for the legislator to include the term home detention in the statute to say that an offender shall be given credit for home detention. And to the extent that Smith and Stolberg say otherwise, then they were wrongly decided. Although it should be pointed out that Smith is also distinguishable because in that case, the defendant was on an appeal bond, which was the terms of which were set by the trial court. So it's a very different situation than that presented here. Again, the bond said that the defendant was to be placed on electronic home monitoring. Um, if, if the defendant, if the court wanted to allow the defendant to leave for whatever reasons, work or family obligations or medical obligations, typically that would have been included in the order of the judge. So was the sheriff enforcing the bond conditions of the judge? Well, the order, um, the orders in question, uh, cited it in winter's reply brief specifically say that the, um, you know, that he, that the court is saying that he's, um, you know, he's ordered to be transferred, but it's pending the Cook County Sheriff's office review and approval. So it's ultimately not the court's authority. The ultimate authority in this situation is the sheriff, um, as the supervising authority, uh, as, um, overseeing the terms and conditions of, of Mr. Winter's, um, home detention. Well, the sheriff has to verify that there's the, that the equipment will work and that the home is appropriate. Um, so there seems to be. Well, okay. Thank you. Well, well, counsel, let me interrupt. I just want to pick, pick up on, uh, justice Rochford's point. And that is ultimately, it is the court that is deciding whether what the conditions of release are going to be. And while it is true that the sheriff may administer, administer portions of, of, of the, um, uh, defendants, um, confinement or, or his conditions of release, ultimately it's up to the court. You raised a point or, or either your opposing counsel did about, um, what the court would do. For example, perhaps it was justice Rochford. Uh, if the defendant wished to travel out of town or the defendant wished to, uh, uh, attend this or that ultimately that would be a decision that the court would make, would it not? So that whatever those conditions, whenever those conditions are set, those are conditions that are, um, are outlined by the court. Would you not agree? Uh, well, your honor in a separate order or a separate document included in the common law record, it indicates that actually that it would be the sheriff who would make that determination because the Mr. Winters needed the sheriff's approval, not just to even meet out. He needed the sheriff's approval to meet with pre-trial to even leave his house, to meet with pre-trial services, which again is further support for the position that he was under the terms and conditions of established supervising authority. In this case, the sheriff. Otherwise there would be no real situation in which this, this, uh, awarding of pre-trial credit for home detention, whatever really apply, it would be completely superfluous language included in the statute. Um, if, if, if, if it were the case that, you know, that a defendant had to be in cut, had to be in custody as past cases have defined that term. Um, and I just wanted to make a point regarding the, uh, state's point about concurrent and consecutive sentence that deals with the length of a sentence. It's not the legislator saying that the terms of confinement mean one thing for one defendant and another thing for another. They're two completely separate concepts. Um, and in regard to the element of notice, um, and the court, I mean, I think the state is misrepresenting. The court was very surprised. It said that it never in once, and it's, I think, 17 years seen a defendant not be awarded credit for time spent on electronic monitoring or home detention. And again, you know, uh, I don't know where the state is getting the idea that Mr. Winters was never informed of this before he agreed to, to, to be on home detention. If he had been, there's very likely that he would not have agreed to it, which just speaks to the fundamental unfairness at issue here. Um, and then, you know, the court did say that it took it into consideration and fashioning a sentence, but that says nothing at all about the constitutionality of the sentence. Uh, Mr. Winters should not have to rely on, you know, the good graces of the court to receive the 817 days credit to which he was statutorily entitled. Um, and if your honors have no further questions, I respectfully ask that you reverse Mr. Winters condition or conviction, um, and, or, uh, award him the 817 days of credit to which he's entitled. Any other questions from the panel? No. Okay. I want to thank counsels for a well-argued matter and for presenting a very interesting case to us. We'll take it under advisement and the court is adjourned.